| SERGIO JACKSON | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE TRUSTEES OF THE | : | |
| UNIVERSITY OF PENNSYLVANIA *et al.* | : | No. 17-4645 |
| *Defendants.* | : | |

# MEMORANDUM

PRATTER, J.                                                                                          JANUARY 22, 2019

Sergio Jackson claims that Michelle Chikaonda falsely accused him of stalking her. In the wake of this allegedly false accusation, Mr. Jackson states that the Wistar Institute terminated his unpaid internship for one day, after which he was reinstated. He also claims that the Trustees of the University of Pennsylvania and the police force in and around the University environs wronged him in connection with Ms. Chikaonda's accusation. Mr. Jackson now brings seven claims against Ms. Chikaonda, Wistar, Penn, Allied Barton Security, and Allied Universal.

He brings three federal law claims: (1) violation of Title IX of the Education Amendments of 1971 against Penn and Wistar; (2) violation of Title VI of the Civil Rights Act of 1964 against Penn; and (3) violation of 42 U.S.C. § 1981 against Penn. He also brings four state law claims: (1) libel against all defendants; (2) intentional infliction of emotional distress against all defendants; (3) negligence against Penn, Wistar, and the Allied Defendants; and (4) negligent infliction of emotional distress against Penn and Wistar.[1]

---

[1] The complaint itself was unclear as to which claims Mr. Jackson was bringing against which defendant, but Mr. Jackson's counsel clarified this on the record during oral argument on the motions to dismiss.

1

Each defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set out in this memorandum, the Court grants the motions to dismiss as to all of Mr. Jackson's claims, except the negligence claim against Penn.

**BACKGROUND**

Sergio Jackson, a black man, claims that he and Michelle Chikaonda, a black woman, met in 2005 while Mr. Jackson was enrolled as a student at the University of Pennsylvania. He claims that he and Ms. Chikaonda had a purely platonic relationship through his graduation in 2007, after which time they casually ran into each other on a few occasions. They had no other relationship.

Mr. Jackson alleges that, on July 26, 2016, he shared a bus ride with Ms. Chikaonda, during which they discussed Mr. Jackson's life. Two days later, Ms. Chikaonda allegedly emailed Mr. Jackson informing him that she believed he had been stalking her for the past two years and that she had made a complaint to the University of Pennsylvania Police Department. On the same day, Mr. Jackson allegedly received what he describes as a "cease and desist email" from Penn Police detective Perdetha Watson. The email stated that Penn Police had informed Ms. Chikaonda that she had the right to report the "problem" to the Philadelphia District Attorney. Mr. Jackson also claims that his driver's license photo was "circulated to various law enforcement members of the University's campus police department and Defendant Wistar Institute."

At the time of these events, Mr. Jackson had an unpaid internship at the Wistar Institute of Anatomy and Biology, a biomedical research organization supposedly affiliated with Penn.[2] On August 1, 2016, a Wistar representative emailed Mr. Jackson about the stalking allegation and informed Mr. Jackson that Wistar was terminating his internship. The next day, however, Mr.

---

[2] Mr. Jackson claims that Wistar and Penn "collaborate on numerous projects" and that Wistar "is open to students of Defendant University." However, Mr. Jackson does not support his allegation that Penn and Wistar are affiliated entities with any facts, and the complaint itself is merely vague and conclusory on this point.

2

Jackson was reinstated to his Wistar internship, allegedly following his discussions with Wistar's Human Resources Department and a Penn Police detective. Nevertheless, Mr. Jackson alleges that he was embarrassed and humiliated as a result of the false accusations made against him.

Mr. Jackson originally filed this lawsuit in Pennsylvania state court on July 28, 2017. The defendants removed the case to federal court on October 18, 2017. The defendants filed separate motions to dismiss.[3]

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

---

[3] The case was transferred to this Court's docket upon the retirement of Judge Lawrence F. Stengel in September 2018. The Court held a status conference with the parties in November 2018, and then held oral argument on the motions to dismiss in January 2019.

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

## DISCUSSION

### I. Introduction

First, the Court addresses Mr. Jackson's claims against the Allied Defendants. The Court will dismiss all claims against the Allied Defendants because, other than merely identifying them, Mr. Jackson fails to assert any facts concerning the Allied Defendants whatsoever. During oral argument, Mr. Jackson's counsel described the Allied Defendants as the employers of the officers but still could not articulate any theory against them.

4

Second, the Court addresses Mr. Jackson's federal law claims. The Court will dismiss all of Mr. Jackson's federal law claims because they are insufficiently pleaded.

Finally, the Court addresses Mr. Jackson's state law claims. The Court will dismiss Mr. Jackson's libel, intentional infliction of emotional distress, and negligent infliction of emotional distress claims because they are insufficiently pleaded. Only Mr. Jackson's negligence claim against Penn survives, but his negligence claims against the other defendants will be dismissed as well.

## II. The Allied Defendants' Motion to Dismiss

The Allied Defendants, subcontractors that provided security services to Wistar, argue that other than identifying their names and addresses, the complaint includes no allegations against—or even mentions—them whatsoever. Because there are no factual allegations asserted against the Allied Defendants, they argue that they should be dismissed from the case. The Court certainly agrees.

Mr. Jackson makes no factual claim concerning the Allied Defendants, let alone any factual allegations that would support any of Mr. Jackson's claims. Although Mr. Jackson argues in his responses to the motions that "Defendants Allied Barton Security and Allied Universal actively participated (as the investigative and security arm of Defendant Wistar Institute) in the inquisitorial proceeding into Defendant Chikaonda's unfounded stalking accusation," absolutely no factual allegations in the complaint support this contention. In short, Mr. Jackson has failed to state a claim upon which relief can be granted as to the Allied Defendants.

## III. Mr. Jackson's Federal Law Claims

Mr. Jackson brings three federal law claims. He brings claims under: (1) Title IX of the Education Amendments of 1971 against Penn and Wistar; (2) Title VI of the Civil Rights Act of

1964 against Penn; and (3) 42 U.S.C. § 1981 against Penn. For the reasons discussed below, the Court will dismiss all of Mr. Jackson's federal law claims.

### A. Title IX of the Education Amendments of 1971

In Count II of Mr. Jackson's Complaint, he claims that Penn and Wistar violated Title IX of the Education Amendments of 1971 by discriminating against him on the basis of sex. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Mr. Jackson claims that:

> Throughout the disciplinary process, the University treated Plaintiff Jackson unfairly because of his sex, including, among other things, by failing to give Plaintiff proper notice of the charges against him; failing to give him basic due process protections such as the right to confront his accuser, to receive copies of relevant evidence, and to present witnesses and other evidence on his own behalf; and by conducting an inadequate, unreliable, and biased investigation of the complaint against him.

Mr. Jackson further claims that "[t]he investigative team's one-sided investigation demonstrated pervasive gender bias," and that Penn's "Disciplinary Procedures as conceived and implemented by the University are deliberately designed to favor the female accuser and disfavor the male accused by, among other things, eliminating from the process the most fundamental procedural safeguards for the accused." Because Penn is a recipient of federal funds, Mr. Jackson claims that Penn's alleged actions place it in violation of Title IX.

However, Mr. Jackson fails to allege facts which indicate that he has any relationship or association with Penn. Although Mr. Jackson is a *former* Penn student (having graduated some nine years before the events in question), he does not claim that he was a student or employee at Penn during the relevant time-period; nor does he claim that he was applying to be a student or

6

employee at Penn.[4] As such, Mr. Jackson fails to allege how he was "excluded from participation in," "denied the benefits of," or was "subject to discrimination under any education program or activity" at Penn, i.e. he fails to trigger a single claim for actions precluded by the statute. Moreover, although Mr. Jackson references the "disciplinary process," Mr. Jackson likewise fails to allege any facts concerning the existence of any disciplinary actions taken against him *by Penn*, other than the "cease and desist" email sent by Detective Watson.[5]

The only alleged deprivation suffered by Mr. Jackson was his one-day temporary release from his internship at Wistar. Although the complaint suggests that Penn and Wistar are "affiliated entities" because "they collaborate on numerous projects" and because Wistar "is open to students of Defendant University," Mr. Jackson does not actually allege any facts supporting his implied argument that Penn is responsible for Wistar's actions.

The Court will briefly discuss relevant case law concerning affiliated entities for Title IX purposes. In *Lam v. Curators of UMKC Dental School*, a private dental clinic hired a university dental student to work at its office. 122 F.3d 654, 655 (8th Cir. 1997). The dental student alleged that a dental clinician sexually assaulted her, and she sued the university under Title IX. *Id.* The university argued that she failed to show a "nexus" between the private office and the university, and the Eighth Circuit Court of Appeals agreed, holding that the "independent, private dental

---

[4] During oral argument, Mr. Jackson's counsel claimed Mr. Jackson was applying to become a student at Penn Medicine. The complaint's only reference to medical school, however, is found at paragraph 13, where it states that during the bus ride on July 26, 2016, Mr. Jackson and Ms. Chikaonda "discussed Plaintiff's plans to apply to medical school." The complaint does not allege that Mr. Jackson actually applied to any medical school; nor does the complaint indicate that Mr. Jackson was applying to Penn Medicine specifically.

[5] During oral argument, Mr. Jackson's counsel claimed that Mr. Jackson was excluded from participation in a Penn "education program or activity" because he was excluded from Penn's campus. However, even if this kind of allegation was enough to subject Penn to liability under Title IX, Mr. Jackson did not allege that he was excluded from Penn's campus anywhere in his complaint.

7

practice" was not a "program or activity of the University" under Title IX. *Id.* at 656. The *Lam* Court reached this conclusion because the university exercised "no control" over the clinic and did not provide the clinic with "staff," "funding," or "any other support." *Id.*

Similarly, in *O'Connor v. Davis*, a college arranged for its student to serve as an unpaid intern at a hospital. 126 F.3d 112, 113 (2d Cir. 1997). The student alleged that she was sexually harassed there, and she sued the college and hospital under Title IX. *Id.* at 114. The college was dismissed from the case. *Id.* The student then argued that Title IX reached the hospital. *Id.* at 118. The Second Circuit Court of Appeals disagreed, holding that the college's status as an education program could not be "imputed" to the hospital because there was no evidence of an "institutional affiliation," a "written agreement binding them," shared staff, or funds "circulated between them." *Id.*

In *Doe v. Mercy Catholic Med. Ctr.*, on the other hand, the Third Circuit Court of Appeals concluded that a private teaching hospital's residency program was, at least plausibly, subject to Title IX because of its alleged "affiliation" with Drexel Medicine. 850 F.3d 545, 557–58 (3d Cir. 2017). Unlike in *Lam* and *O'Connor*, where there were no facts supporting the plaintiffs' claims of affiliation between the schools and the private entities, in *Mercy*, the plaintiff, who was a resident at the private teaching hospital, alleged that she was required to take a physics class on Drexel's campus and that the teaching hospital provided clinical programs for Drexel's emergency medicine residency. 850 F.3d at 558. These facts, the Third Circuit Court of Appeals explained, made it plausible to infer an "agreement binding" them and the sharing of "staff" and "funds." *Id.*

Here, like in *Lam* and *O'Connor*, and unlike in *Mercy*, Mr. Jackson does not allege facts sufficient to show that Penn provides Wistar funding, that Penn shares staff with Wistar, or that Penn and Wistar are otherwise "affiliated" entities. As such, Mr. Jackson fails to explain how his

8

internship at Wistar constitutes an "educational program or activity" of Penn or how Wistar's one-day temporary release of Mr. Jackson creates a legal claim against Penn under Title IX. Therefore, Mr. Jackson's Title IX claim against Penn will be dismissed.

Although, from the complaint, Mr. Jackson's Title IX claim appears solely directed against Penn, Mr. Jackson's counsel claimed during oral argument that it was also directed against Wistar. The Court will dismiss this claim as to Wistar as well because (1) Mr. Jackson fails to allege that Wistar receives federal funding; and (2) as discussed above, Mr. Jackson fails to allege facts sufficient enough to establish any affiliation between Penn and Wistar, much less one that creates liability of one for the other.

### B. Title VI of the Civil Rights Act of 1964

In Count VI of Mr. Jackson's Complaint, he claims that Penn violated Title VI of the Civil Rights Act of 1964 by discriminating against him on the basis of race. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. 2000d. To establish standing under Title VI, "the plaintiff must be the intended beneficiary of the federal spending program." *Brown-Dickerson v. City of Philadelphia*, Civ. No. 15-4940, 2016 U.S. Dist. LEXIS 54624, at \*24 (E.D. Pa. Apr. 25, 2016) (citing *NAACP v. Medical Center, Inc.*, 599 F.2d 1247, 1252 (3d Cir. 1979)); *see also Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980) (explaining that the private plaintiff must be the "intended beneficiary of, an applicant for, or a participant in a federally funded program" in order to bring a Title VI action).

Here, although Mr. Jackson alleges that Penn is a recipient of federal funding, he does not allege any facts to support a finding that he was the "intended beneficiary of, an applicant for, or

9

a participant in a federally funded program." As discussed in the Title IX section above, Mr. Jackson does not claim that he was a student or employee at Penn during the relevant time-period; nor does he claim that he was applying to be a student or employee at Penn. Therefore, Mr. Jackson has no standing to bring a Title VI claim. *Brown-Dickerson*, 2016 U.S. Dist. LEXIS 54624, at *24 (dismissing a Title VI claim where the plaintiffs had not pleaded facts sufficient to demonstrate that they were "the intended beneficiaries of whatever federal funds [the defendant] benefit[ed] from"). Thus, the Court will dismiss Mr. Jackson's Title VI claim against Penn.

### C. 42 U.S.C. § 1981

In Count VII of his complaint, Mr. Jackson also alleges that Penn illegally discriminated against him on the basis of race in violation of 42 U.S.C. § 1981. Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The Supreme Court has explained that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006). Therefore, "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship' . . . under which the plaintiff has rights." *Id.*

Here, Mr. Jackson baldly alleges that "[a] contractual relationship existed between Plaintiff and the University." He then claims that "[t]he acts and omissions of the University, which include

10

acts and omissions of the University's agents and employees, violated Plaintiff's rights and interfered with the enforcement and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship by discriminating against him on the basis of race." However, Mr. Jackson does not describe any conceivable contracts between him and Penn (his status as alumnus does not justify any contract claim); nor does he allege facts that could support a finding that a proposed contractual relationship existed. Therefore, the Court will dismiss Mr. Jackson's 42 U.S.C. § 1981 claim against Penn.

### IV. Mr. Jackson's State Law Claims

Mr. Jackson also brings four state law claims: (1) libel against all defendants; (2) intentional infliction of emotional distress against all defendants; (3) negligence against Penn, Wistar, and the Allied Defendants; and (4) negligent infliction of emotional distress against Penn and Wistar. As discussed below, the Court will dismiss Mr. Jackson's libel, intentional infliction of emotional of distress, and negligent infliction of emotional distress claims as to all defendants. The Court will also dismiss Mr. Jackson's negligence claim against Wistar and the Allied Defendants. The only claim that may proceed is Mr. Jackson's negligence claim against Penn.

#### A. Libel

In Count I of Mr. Jackson's complaint, he brings libel claims against all defendants. In Pennsylvania, defamation—which includes libel, slander, and invasion of privacy—is the tort of detracting from a person's reputation or injuring a person's character by false and malicious statements. *See Joseph v. Scrantom Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008). To prevail on a defamation claim, the plaintiff must establish the following elements:

(1) the defamatory character of the communication;

(2) its publication by the defendant;

(3) its application to the plaintiff;

11

(4) the understanding by the recipient of its defamatory meaning;

(5) the understanding by the recipient of it as intended to be applied to the plaintiff;

(6) special harm resulting to the plaintiff from its publication; and

(7) abuse of a conditionally privileged occasion.

*Id.* at 335 (citing 42 Pa.C.S.A. § 8343(a)). The statement must also be "published or communicated to a *third person*." *Elia v. Erie Ins. Exchange*, 634 A.2d 657, 660 (Pa. Super. Ct. 1993) (emphasis added).

In his complaint, Mr. Jackson identifies three potentially defamatory communications:

(1) A July 28, 2016 "cease and desist" email from Detective Watson of the Penn Police department to Mr. Jackson, stating that Penn informed Ms. Chikaonda that she had the right to report the "problem" to the Philadelphia District Attorney;

(2) An August 1, 2016 email from Wistar to Mr. Jackson, informing him that he was being released from his internship and that his identification badge would be deactivated; and

(3) General allegations that Mr. Jackson's "Driver's License photo was circulated to various law enforcement members of the University's campus police department and Defendant Wistar Institute."

Mr. Jackson's libel claims against Penn and Wistar fail for two reasons.[6] As for the first two emails, Mr. Jackson fails to allege that they were published to any identified third persons. As

---

[6] Although Mr. Jackson's libel claim is asserted against all the defendants, the only potentially defamatory statements identified in the complaint are attributed to Penn and Wistar, not to the Allied Defendants or Ms. Chikaonda. To the extent Mr. Jackson's complaint can be interpreted as asserting a libel claim against Ms. Chikaonda for reporting him to Penn Police, the claim is dismissed because statements to law enforcement officials accusing someone of criminal activity are absolutely privileged under Pennsylvania Law. *See Marino v. Fava*, 915 A.2d 121, 124 (Pa. Super. Ct. 2006) (explaining that the absolute privilege protecting communications made in the course of judicial proceedings extends to statements made to law enforcement officials); *Pawlowski v. Smorto*, 588 A.2d 36, 42 (Pa. Super. Ct. 1991) (holding that statements amounting to an accusation of a crime made to law enforcement officials are absolutely privileged).

for the third communication, Mr. Jackson fails to identify who circulated his photo or allege that any defamatory statement accompanied the photo.

First, Mr. Jackson's libel claim concerning the July 28, 2016 and August 1, 2016 emails fails because he did not allege that the emails were sent to or read by any identified third persons. Mr. Jackson states in only a vague fashion that these emails were "published" by the defendants in that they were sent by email and were "read by persons in the Commonwealth of Pennsylvania." However, excluding these conclusory statements about unidentified recipients, Mr. Jackson does not allege that either email was sent to or read by anyone other than Mr. Jackson himself.

Thus, Mr. Jackson's libel claim as to these emails fails. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 230 n.6 (3d Cir. 1997) ("Publication consists of the communication of the information to at least one person other than the person defamed.") (citation omitted); *Pilkington v. CGU Ins. Co.*, Civ. No. 00-2495, 2001 U.S. Dist. LEXIS 3668, at *16 (E.D. Pa. Feb 12, 2001) (dismissing defamation claim because "[p]laintiff's allegation that defendant published the statement to unspecified third parties does not satisfy the requirements of Pennsylvania law"); *Rembert v. Allstate Ins. Co.*, Civ. No. 00-848, 2000 U.S. Dist. LEXIS 16706, at *4 (E.D. Pa. Nov. 13, 2000) ("To state a defamation claim, a plaintiff must identify specifically individuals to whom the allegedly defamatory comments were made.") (citations omitted).

Second, Mr. Jackson claims that his driver's license photo was circulated to various members of Penn Police and Wistar because of Ms. Chikaonda's allegations. However, Mr. Jackson fails to allege who did or might have done the circulating. Moreover, Mr. Jackson fails to set forth any factual allegations with respect to any potentially defamatory statement that may have been circulated with Mr. Jackson's photo. Therefore, the Court cannot determine who is the

proper defendant as to this libel claim or evaluate whether the emails with Mr. Jackson's photo were defamatory at all.

For these reasons, the Court will dismiss Mr. Jackson's libel claim as to all defendants.

### B. Intentional Infliction of Emotional Distress

In Count IV of his complaint, Mr. Jackson brings intentional infliction of emotional distress claims against all defendants. Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate "intentional outrageous or extreme conduct by the defendants, which causes severe emotional distress to the plaintiff." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). In addition, a plaintiff "must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Id.* (citation and internal quotation marks omitted). Liability on an intentional infliction of emotional distress claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 231–232 (quoting *Field v. Phila. Elec. Co.*, 388 Pa. Super. 400, 428 (Pa. Super. Ct. 1989)).

Courts in this Circuit have strictly applied this high standard for intentional infliction of emotional distress claims in cases involving allegedly false allegations. *See e.g. McClain v. Munn*, C.A. 06-278, 2008 U.S. Dist. LEXIS 28985, at *15–16 (M.D. Pa. April 9, 2008) (dismissing intentional infliction of emotional distress claim where plaintiff alleged that he was terminated after being falsely accused of crimes); *Atkinson v. City of Philadelphia*, Civ. No. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *20–21 (E.D. Pa. June 20, 2000), *aff'd.*, 281 F.3d 218 (3d Cir. 2001) (finding plaintiff could not sustain a claim of intentional infliction of emotional distress where the

plaintiff claimed that a detective submitted a false affidavit to obtain an arrest warrant, and police officers forced their way into the plaintiff's home and terrified his children while executing the warrant); *Gonzalez v. CAN Ins. Co.*, 717 F. Supp. 1087, 1088–89 (E.D. Pa. Aug. 14, 1989) (dismissing intentional infliction of emotional distress claim where plaintiff alleged that he was terminated after being falsely accused of sexual harassment).

Mr. Jackson claims that all the defendants' actions caused him severe emotional distress. However, even interpreted in a most indulgent light and giving Mr. Jackson the benefit of being an especially sensitive individual, the facts alleged by Mr. Jackson do not rise to any level of atrocity needed to sustain a claim for intentional infliction of emotional distress under Pennsylvania law. Therefore, Mr. Jackson's intentional infliction of emotional distress claims will be dismissed as to all defendants.

**C. Negligence**

In Count III of Mr. Jackson's complaint, he brings negligence claims against Penn, Wistar, and the Allied Defendants. To establish the existence of negligence under Pennsylvania law, the plaintiff must establish four elements: "(1) the duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Here, Mr. Jackson alleges that Penn owed him "a duty of reasonable care in selecting, training, and supervising investigators to implement the Disciplinary Procedures." Mr. Jackson then claims that Penn breached this duty by "failing to adequately select, train, and supervise the investigative team and thereby allowing it to conduct a sham investigation, discriminate against the Plaintiff based on gender and racial stereotypes, produce flawed and biased reports, and reach unwarranted and erroneous conclusions." Finally, Mr. Jackson claims that, as a result of Penn's breach, he has sustained significant damages, including, but not limited to, "severe emotional

15

distress, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic loss, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages."

Penn argues that Mr. Jackson's allegations of breach are not supported by any facts concerning the alleged investigation. Penn also argues that, although Mr. Jackson claims damages, he fails to provide even one factually specific allegation to detail his claim. However successful Penn may ultimately prove to be on this claim, Penn fails to point to any cases in support of its arguments at this early stage of the case, and at this stage in the litigation, the Court concludes that Mr. Jackson has managed to sufficiently plead his negligence claim against Penn. The details of the investigation as well as the details concerning Mr. Jackson's alleged damages, if any, can be ferreted out in discovery.

To the extent Mr. Jackson's complaint can be interpreted as asserting negligence claims against the other defendants, these negligence claims will be dismissed. Mr. Jackson does not allege that any of the other defendants owed him a duty or breached any such duty.

**D. Negligent Infliction of Emotional Distress**

Finally, in Count V of his complaint, Mr. Jackson brings negligent infliction of emotional distress claims against Penn and Wistar. Under Pennsylvania law, negligent infliction of emotional distress "is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger . . . or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–198 (Pa. Super. Ct. 2008) (citations omitted). Mr. Jackson does not allege that he was subjected to a physical impact, that he was in a zone of danger, or that he observed a tortious injury to a close relative.

16

The only defendant that plausibly owed Mr. Jackson a contractual duty is Wistar, as Mr. Jackson alleged that he had an unpaid internship with Wistar during the relevant time-period. Therefore, Mr. Jackson's negligent infliction of emotional distress claim against Penn, which owed him no known or alleged fiduciary or contractual duty, will be dismissed.[7]

As for Mr. Jackson's negligent infliction of emotional distress claim against Wistar, when proceeding under the contractual or fiduciary duty theory, "a plaintiff must establish the elements of a negligence claim, i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Id.* at 198 (citation and internal quotation marks omitted). As discussed in the negligence section above, Mr. Jackson did not sufficiently allege that Wistar breached any duty it may have owed him. Therefore, Mr. Jackson's claims for negligent infliction of emotional distress against Wistar will be dismissed as well.

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants the motions to dismiss as to all of Mr. Jackson's claims except his negligence claim against Penn. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[7] Although, as discussed above in the 42 U.S.C. § 1981 section, Mr. Jackson baldly asserts that he had a contractual relationship with Penn, no facts in the complaint support this allegation.

17